IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

FRANK K. C. HERTEL, SR.,

          Petitioner,         :      Case No. 2:19-cv-1205

  - vs -                          District Judge George C. Smith
                                    Magistrate Judge Michael R. Merz

DAVE YOST, Attorney General,
  State of Ohio,

                                 :
          Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 18) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 17), recommending granting Respondent's Motion to Dismiss this case as untimely filed (ECF No. 12). District Judge Smith has recommitted the case for reconsideration in light of the Objections (ECF No. 19).

In his Memorandum in Opposition to the Motion to Dismiss, Hertel raised six defenses. The Report dealt with each of them in turn and this Supplemental Report follows the same form.

**Expiration of Direct Review**

The default date from which to calculate the expiration of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") one-year statute of limitations is the conclusion of direct review. 28 U.S.C. § 2244(d)(1). Respondent argued the conviction became final on direct review

on December 15, 2015, the last date on which Hertel could have sought direct review in the United States Supreme Court (Motion to Dismiss, ECF No. 12, PageID 1510). Hertel argued that, as part of his plea agreement, he had reserved the right to appeal consecutive sentences. He did not exercise that reserved right in his first appeal, but attempted to do so in a delayed appeal. However, no delayed appeal was granted and the Report noted lack of any Ohio authority for a second, delayed, appeal when a first appeal of right had been taken (Report, ECF No. 17, PageID 1590-91).

In his Objections, Hertel does not take issue with this analysis. Instead he claims his time to file under 28 U.S.C. § 2244(d)(1) was tolled by his filing his post-conviction relief petition on February 10, 2017 (ECF No. 18, PageID 1598). To substantiate that filing date, rather than the February 21, 2017, date claimed by Respondent, Hertel points to the text of his post-conviction relief petition at, which at PageID 1138 claims it was mailed on February 10, 2017. Hertel claims to be entitled to the date of mailing as his date of filing. *Id.*, citing State Court Record, ECF No. 11-2, PageID 1138.

Incarcerated federal litigants are entitled to the benefit of the prison mailbox rule, the rule Hertel is invoking. *Houston v. Lack,* 487 U.S. 266, 275-76 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). However, the mailbox rule is not binding on the States. *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003), citing *Houston*, 487 U.S. 266; *Adams v. LeMaster,* 223 F.3d 1177, 1183 (10th Cir. 2000). Ohio has refused to adopt the mailbox rule. *State, ex rel Tyler, v. Alexander*, 52 Ohio St. 3d 84 (1990) (noting that *Houston* is not a constitutional decision and finding its logic unpersuasive.) Under Ohio law, Hertel's petition for post-conviction relief was not filed until it was received and docketed by the Clerk of the Delaware County Court of Common Pleas on February 21, 2017.

In considering his post-conviction petition, the Common Pleas Court found that the "final transcripts [from trial] were filed in the Fifth District Court of Appeals on December 2, 2014." (Judgment Entry, State Court Record, ECF No. 11-2, PageID 1253). Under Ohio Revised Code § 2953.21(A)(2), Hertel had 365 days from that date to file a petition for post-conviction relief, or until December 3, 2015. Both February 10, 2017 (the mailing date) and February 21, 2017 (the received and docketed date) are more than a year after the time to file expired. The Common Pleas Court accordingly held "Defendant has filed his petition outside of the time frame set forth in [Ohio Revised Code §] 2953.21 ." *Id.*

Because Hertel's post-conviction petition was not a properly filed collateral attack on his conviction, it does not toll the time to file federal habeas under 28 U.S.C. § 2244(d)(2). In *Pace v. DiGuglielmo*, the Supreme Court held that a postconviction petition rejected by the state courts as untimely is not "properly filed" within 28 U.S.C. § 2244(d)(2) 544 U.S. 408, 413 (2005); accord: *Allen v. Siebert,* 552 U.S. 3 (2007) (per curiam) (an untimely post-conviction petition is not properly filed regardless of whether the time element is jurisdictional or an affirmative defense.)

In his Objections, Hertel claims the support of *Hemmerle v. Schriro,* 495 F.3d 1069 (9th Cir. 2007) regarding the gaps between filings of collateral attacks (ECF No. 18, PageID 1599). The Magistrate Judge merely notes that this is Ninth Circuit precedent, which is not binding in the Sixth Circuit. Neither has Hertel cited any instance where a court in the Sixth Circuit has followed *Hemmerle*.

Hertel's Petition was not filed within one year of the conclusion of direct review in his case.

**Late Discovery of Factual Predicates**

In his second defense of timeliness, Hertel relies on 28 U.S.C. § 2244(d)(1)(D) which provides that the statute of limitations will run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Hertel had argued that Magistrate Judge Chelsey Vascura's issuance of the Order to Answer implied a finding that he met this standard. The Report rejected that claim (Report, ECF No. 17, PageID 1591-93).

Hertel now claims that the relevant factual predicate which started the statute running under 28 U.S.C. § 2244(d)(1)(D) is that classification under the Sexual Offenders Registration Act ("SORA") constitutes punishment and he did not learn that until he read the April 2018 issue of the "NARSOL Digest" or until "he had a copy of [Ohio Revised Code Ch.] 2950 in May of 2018" (Objections, ECF No. 18, PageID 1600). As he did in his opposition to the Motion to Dismiss, Hertel relies on *Does #1-5 v. Snyder*. *Id.*, citing 834 F.3d 696 (6th Cir. 2016). In that case the circuit court held that the 2006 and 2011 amendments to the Michigan Sexual Offender Registration Act imposed punishment on those subjected to them and therefore could not be applied retroactively because of the Ex Post Facto Clause. *Does*, 834 F.3d at 700.

Hertel does not dispute the finding in the Report that Ohio's SORA was applied retroactively to him at his re-sentencing in 2014 (ECF No. 17, PageID 1595). Yet, while he asks this Court "to find that [Ohio Revised Code Ch.] 2950 is the factual predicate," (Objections, ECF No. 18, PageID 1600), the Court should not do so. Hertel had Ohio's SORA applied retroactively to him in 2014. If he did not learn the legal significance of that fact (to wit, that such application is unconstitutional) until 2018, that is not the discovery of a fact. His acquiring of Ohio Revised

4

Code Ch. 2950 four years after he was sentenced retroactively under it is not shown by him to have been done in the exercise of due diligence. Finally, Hertel recites the various discoveries of legal conclusions he made by his legal research before filing his habeas corpus petition (Objections, ECF No. 18, PageID 1602-03 (citations omitted)). Again, legal conclusions are not facts which form the basis of his claim.

**State-Created Impediments to Filing**

Hertel also relied on 28 U.S.C. § 2244(d)(1)(B), asserting Ohio and Arizona created impediments to his filing. The Repot rejected this defense on the basis of *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452 (6th Cir. 2012), and *Bonilla v. Hurley,* 370 F.3d 494 (6th Cir. 2004) (ECF No. 17, PageID 1593).

The Objections criticize the Report for not considering each of Hertel's specific asserted deficiencies in Ohio and Arizona prison law libraries and finding whether these constitute a denial of access to the courts under *Bounds v. Smith* (ECF No. 18, PageID 1605, citing 430 U.S. 817 (1977)). Hertel relies on *Jackson v. Jamrog*, *id*., citing 411 F.3d 615 (6th Cir. 2005)), which he says stands for the proposition that the State has "an affirmative duty to help inmates prepare and file legal papers by establishing an adequate law library or by providing adequate assistance from persons trained in the law." *Id*. *Jackson* is a habeas corpus case in which the circuit court upheld the district court's dismissal where the claim was that the Michigan statute giving prosecutors and crime victims a right to appeal parole board decisions, but no such right to inmates, was an unconstitutional denial of equal protection. Along the way, the court recognized the authority of *Bounds*, but in no way held as a matter of law the proposition for which Hertel cites it. *Jackson*,

411 F.3d at 619, 620. The Magistrate Judge is not aware of any case authority for the proposition that failure to the State to provide a law library that meets *Bounds* requirements would constitute a state-created impediment to filing a habeas petition. Such a holding would contravene *Keeling* and *Bonilla*.

Hertel relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), for the proposition that ineffective assistance of trial counsel and ineffective assistance of appellate counsel constitute state-created impediments to filing (Objections, ECF No. 18, PageID 1606). In *Martinez* the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

566 U.S. at 14. *Martinez* allows a habeas petitioner in certain instances to excuse a procedural default in presenting a claim by showing that the petitioner received ineffective assistance of counsel rising to the *Strickland* level in presenting a post-conviction claim of ineffective assistance of trial counsel. The Magistrate Judge is unaware of any case law holding that ineffective assistance of trial counsel or ineffective assistance of appellate counsel constitutes a state-created impediment that would qualify under § 2244(d).

6

**Extraordinary Circumstances**

In his fourth defense of the timeliness of his Petition, Hertel relied in part on the lack of Ohio legal resources and the fact that his crimes happened many years ago (Memo in Opp., ECF No. 16, PageID 1554-59). The Report rejected this defense for reasons given above and because the age of the case was mostly attributable to Hertel's flight to Germany to avoid prosecution (Report, ECF No. 17, PageID 1594).

Hertel objects (ECF No. 18, PageID 1608-09), but does not raise any new argument that requires additional analysis.

**Actual Innocence of Being a Tier Three Sex Offender**

In his fifth defense of the timeliness of his Petition, Hertel asserts he is actually innocent of being a Tier III sex offender. In response, Hertel again relied on *Does* (ECF No. 16, PageID 1560-61), where the circuit court held retroactive application of Michigan's Sexual Offender Registration Act was unconstitutional retroactive punishment. The Report rejected this argument because *Does* says nothing about statute of limitations issues and, if anything, makes Hertel legally, not factually, innocent of being a Tier III sex offender (ECF No. 17, PageID 1594-95).

Hertel objects and says he has produced new evidence that he is actually innocent of being a Tier III sex offender under "old" Ohio law, Ohio Revised Code 2950 as it existed at the time of his conviction (Objections, ECF No. 18, PageID 1611, citing Response, ECF No. 16, PageID 1561-62)). What appears at those pages is not any "new evidence" at all. but new argument about how the Sexual Offender Registration Act, as interpreted in *State v. Cook,* 83 Ohio St. 3d 404 (1998),

7

does not apply to him.

Actual innocence of the crime in suit will excuse procedural defaults in presenting the claim, including failing to file within the statute of limitations. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
> 
> * * *
> 
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

569 U.S. 383, 386-87 (2013).

In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit, anticipating *McQuiggin*, held Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup [v. Delo]* actual innocence exception." 395 F.3d at 599. The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is

8

> whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Id*. at 589-90 (6th Cir. 2005). The *Souter* exception does not apply when a petitioner's assertion of actual innocence is based solely on his interpretation of the law; new exculpatory evidence is required. *Ross v. Berghuis,* 417 F.3d 552, 555 (6th Cir. 2005).

Hertel has presented no new evidence of the type required by *McQuiggin, Schlup*, and *Souter* of his actual innocence of the underlying crime.

**Relation Back**

Hertel's sixth defense of the timeliness argues that the claims made in his Petition relate back to the claims made in his prior habeas corpus case because they arise from the same common core of operative facts (Response, ECF No. 16, PageID 1563-64, relying on *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

The Report rejected this argument because Hertel was not seeking to amend a pending habeas petition, but claiming relation back to a prior habeas petition, which had been dismissed with prejudice and remains subject to final judgment (Report, ECF No. 17, PageID 1595, citing

9

Case No. 2:16-cv-435.)

Hertel objects that *Mayle* should be extended to a case such as this (Objections, ECF No. 18, PageID 1612, relying on *Parr v. United States*, 351 U.S. 513 (1956); *United States v. Bratcher*, 833 F.2d 69 (6th Cir. 1988)). In *Parr*, the Supreme Court held that a dismissal of an indictment without prejudice was not a final order appealable by the defendant. 351 U.S. at 518-19. In *Bratcher*, the district court granted dismissal without prejudice of a superseding indictment for violation of the Speedy Trial Act. The Sixth Circuit held the dismissal order was not final and appealable. 833 F.3d at 71-72.

Neither *Parr* nor *Bratcher* has any application to this case. Judge James L. Graham's dismissal of Hertel's prior habeas action was with prejudice, allowing an immediate appeal under 28 U.S.C. § 1291. Hertel took no appeal and the judgment in the prior case is thus final. Hertel has not sought to reopen that judgment and the time for doing so has expired (Fed.R.Civ.P. 60(b)). Only if that judgment were reopened and Hertel then sought to amend the prior petition could the Court even make any sense of a relation back argument.

**Cause and Prejudice to Excuse Procedural Default**

In his Objections, Hertel faults the Report for not discussing his claim that ineffective assistance of trial counsel and ineffective assistance of appellate counsel excuse any procedural defaults he may have incurred (Objections, ECF No. 18, PageID 1613). Instead of the six defenses to Respondent's untimeliness assertion which the Report discusses, Hertel claims he factually offered eight defenses. *Id.*

In his Memorandum in Opposition, Hertel does argue that ineffective assistance of trial

counsel and ineffective assistance of appellate counsel will excuse procedural defaults (ECF No. 16, PageID 1564). The reason the Report did not deal with this argument is that Respondent did not raise any procedural default as a ground for finding the Petition was untimely. In other words, procedural default doctrine is irrelevant to the pending Motion.

**Pending Ohio Cases**

Hertel also objects that the Report does not deal with his claim that his Petition is timely because he will still be able to file an Ohio habeas corpus action when he is returned to Ohio custody after expiration of his Arizona sentence (ECF No. 18, PageID 1615).

The Objections are correct that the Report does not deal with this claim. However, the claim is without merit. The Respondent pointed out that Ohio courts will not hear a habeas corpus claim brought by a person who is not presently in custody in Ohio (Motion to Dismiss, ECF No. 12, PageID 1523). This bar to an Ohio habeas action will presumably be lifted when Hertel is returned to Ohio custody, although the Magistrate Judge offers no opinion on the scope of consideration in such an action. But the fact that Ohio may eventually have habeas corpus jurisdiction over Hertel does not impact the federal statute of limitations. Under 28 U.S.C. § 2254(d)(2), a properly filed collateral attack on a state judgment will toll the AEDPA statute of limitations, but filing a new collateral attack after the statute has run does not resurrect the limitations period. *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001).

**Jurisdiction to Vacate Void Sentences**

In a ninth argument in his Objections, Hertel asks this Court to ignore the statute of limitations and adjudicate his claim that his conviction and sentence are void (ECF No. 18, PageID 1616). However, Hertel cites no federal authority that this Court may ignore the validly-enacted AEDPA statute of limitations to hear a claim that a state conviction is void.

**Certificate of Appealability**

Hertel argues that, if the Court does not grant him relief, it should in the alternative grant him a certificate of appealability. Although he cites the controlling Supreme Court opinion on granting a certificate (Objections, ECF No. 18, PageID 1617, citing *Slack v. McDaniel,* 529 U.S. 473 (2000)), he cites no case authority in which a reasonable jurist has disagreed with any of the conclusions reached by the Magistrate Judge. His citation to *Jennings v. Woodford*, *id.*, citing 290 F.3d 1006 (9th Cir. 2000), is unpersuasive because, again, Ninth Circuit precedent does not control in the Sixth Circuit.

To obtain a certificate of appealability, a petitioner must show at least that jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack*, 529 U.S. at 484. That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or that they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004), citing *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003. Issuance of blanket grants or denials of certificates of appealability is error. *Porterfield v. Bell,* 258 F.3d 484(6th Cir. 2001); *Murphy v. Ohio*, 263 F.3d

12

466 (6th Cir. 2001). If this Court is in error in denying a certificate, the Sixth Circuit retains authority, granted by the AEDPA itself, to consider that question *de novo*.

**Conclusion**

Having reconsidered the matter, the Magistrate Judge again concludes the Petition should be dismissed as barred by the statute of limitations. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 14, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.