**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

**FRANK K. C. HERTEL, SR.,**

        **Petitioner,**

                            **Case No. 2:19-cv-1205**
   - vs -                    **District Judge George C. Smith**
                            **Magistrate Judge Michael R. Merz**

**DAVE YOST, Attorney General,
State of Ohio,**

        **Respondent.**

## OPINION AND ORDER

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 21) to the Magistrate Judge's Supplemental Report and Recommendations again recommending that the Petition be dismissed as untimely filed (ECF No. 20). The Magistrate Judge had made the same recommendation in his original Report (ECF No. 17) and the Petitioner had objected to that Report as well (ECF No. 18).

As required by Fed. R. Civ. P. 72(b), the District Judge has reviewed *de novo* those portions of both Reports and Recommendations to which Petitioner has objected and rules on those objections in the Order.

The Petition in this case was filed March 26, 2019, the date Petitioner deposited it in the prison mail system at his place of incarceration in Arizona (ECF No. 4). In response to Magistrate Judge Vascura's Order for an answer (ECF No. 3), Respondent filed a Motion to Dismiss (ECF No. 12) raising the statute of limitations defense. Petitioner responded with six defenses of the

timeliness of his Petition (Response in Opposition, ECF No. 16). Magistrate Judge Merz's original Report and Supplemental Report discuss each of those defenses in turn (ECF Nos. 17, 21).

## I. Expiration of Direct Review

The default date to start the running of the AEDPA statute of limitations is the date on which a conviction becomes final on direct review. 28 U.S.C. § 2244(d)(1)(A). Respondent contends that date is December 15, 2015, the last date on which Petitioner could have sought review of his conviction by the United States Supreme Court. The original Report correctly held, contrary to Petitioner's argument that there is no authority in Ohio for a second delayed direct appeal when a first appeal of right has been taken. In Objections to that Report, Petitioner asserted instead that his time to file was tolled by filing a petition for post-conviction relief.

The Magistrate Judge's Supplemental Report correctly holds that an untimely filed petition for post-conviction relief is, under federal law, not a "properly filed" collateral attack on a judgment so as to toll the time under 28 U.S.C. § 2244(d)(2)(Supplemental Report, ECF No. 20, PageID 1624, citing *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), and *Allen v. Siebert,* 552 U.S. 3 (2007) (per curiam). Because the Delaware County Court of Common Pleas had held Petitioner's post-conviction petition was untimely, § 2244(d)(2) was not available to toll the statute of limitations.

In his Objections to the Supplemental Report, Petitioner argues that the statute was tolled from February 10, 2016, until May 10, 2016, when his time for seeking review by certiorari expired, relying on *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003)(Objections, ECF No. 21, PageID 1638.) *Abela* was overruled by the Supreme Court's decision in *Lawrence v. Florida*, 549 U.S. 327 (2007), which held a state post-conviction petition is not pending so as to toll the statute of limitations during the pendency of a petition for certiorari or during the time when a litigant could have sought certiorari. The Sixth Circuit has recognized that *Abela* was overruled by *Lawrence* in *Allen v. Bell*,

2007 U.S. App. LEXIS 23975 (6th Cir. 2007), and *Kincade v. Wolfenbarger*, 2009 U.S. App. LEXIS 8197 (6th Cir. 2009).

The Court concludes that Petitioner's conviction became final on December 15, 2015. His filing on March 26, 2019, is therefore untimely unless he can show a later start date is applicable.

## II.     Late Discovery of Factual Predicates

28 U.S.C. § 2244(d)(1)(D) provides that the AEDPA statute of limitations will begin to run on the date a factual predicate for the claim could have been discovered through the exercise of due diligence if that date is later than the date the conviction becomes final.

Petitioner initially claimed he learned of relevant factual predicates from Magistrate Judge Vascura's Order for answer (ECF No. 3). The original Report rejected that argument and Petitioner then claimed in his first set of Objections that "classification under the Sexual Offenders Registration Act ("SORA") constitutes punishment and he did not learn that until he read the April 2018 issue of the "NARSOL Digest" or until "he had a copy of [Ohio Revised Code Ch.] 2950 in May of 2018." (Objections, ECF No. 18, PageID 1600). The Magistrate Judge's Supplemental Report correctly found that Hertel learned that Ohio's SORA was being applied retroactively to him in 2014. After that the Sixth Circuit held that retroactive application of the Michigan SORA constituted punishment and was therefore an invalid ex post facto law. *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). Petitioner relied on *Does #1-5* which he claims he did not learn of until 2018; he makes the same claim as to Ohio Revised Code Ch. 2950.

The Supplemental Report rejected this claim and various other discoveries Petitioner made in his legal research as coming within the meaning of "factual predicates" in 28 U.S.C. § 2244(d)(1)(D), holding instead that they were discoveries of legal conclusions (Supplemental Report, ECF No. 20,

3

PageID 1625-26). Petitioner objects that he did not learn of the differences between the old and new Ohio sexual offender statutes in time to file his Petition in 2016

> because "the State of Ohio/Arizona failed to provide him a prison law library, an Ohio certified paralegal, a copy of the 'old' Ohio statutes and effective counsel. . . . Neither did the [Supplemental Report and Recommendations] show how indigent prisoner Mr. Hertel might have discovered [Ohio Revised Code Ch.] 2950 where neither State made that statute available to him."

(Objections, ECF No. 21, PageID 1640).

The burden of proving due diligence to come within § 2244(d)(1)(D) is on the prisoner who asserts he was diligent. Instead of shouldering that burden, Petitioner blames Arizona and Ohio for not providing him with legal resources or, more accurately, not guessing what resources he might need and providing them. Petitioner has not told the Court what he did to acquire a copy of Ohio Revised Code Ch. 2950 which would then lead to the question why he did not do it sooner.

The Sixth Circuit has held that lack of counsel, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse failure to file an appeal in the Supreme Court of Ohio within the forty-five days allowed for such an appeal *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004), *citing Murray v. Carrier,* 477 U.S. 478, 494-95 (1986). The factors listed by Petitioner parallel those found insufficient in *Bonilla* and Petitioner had far longer than forty-five days to file his Petition after his conviction became final.

The Court also agrees with the Report and Supplemental Report that these discoveries are of legal conclusions as opposed to "factual predicates" of habeas corpus claims. Petitioner cites the definition of "factual predicate" from Black's Law Dictionary (8th ed.)[1] as "a fact from which a presumption or inference arises." That definition must be applied to "factual predicate" in the statutory context in which Congress used it in the AEDPA which is "the date on which the factual predicate of

---
[1] The same definition of "predicate fact" is carried forward in the eleventh edition of Black's.

the claim or claims presented could have been discovered through the exercise of due diligence." The Magistrate Judge concluded the relevant factual predicate was that Petitioner had been retroactively subjected to the registration requirements of the Ohio Sexual Offender Registration Act. Petitioner learned that fact when it happened to him in 2014. But Petitioner claims the term "factual predicate" extends to the times later than 2014 when he learned the legal consequences of that application, particularly when the Sixth Circuit declared retroactive application of Michigan SORA was unconstitutional in *Does #1-5* in 2016 and then he learned of that decision two years later. By Petitioner's definition of factual predicate, the statute of limitations would never start to run as long as the legal consequences of past facts kept changing and a potential petitioner had not learned of those changes.

Such an interpretation of "factual predicate" would completely undermine the purpose of a statute of limitations because it would keep the statute running virtually indefinitely. In interpreting a statute a court should:

1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then

2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169. Purposive interpretation is in contrast to wooden applications of dictionary definitions. "It is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meeting." *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945)(L. Hand, J.). To carry out the purpose of § 2244(d)(1)(D), the Court instead

5

adopts the distinction between factual predicates and legal consequences recommended by the original Report to parallel the distinction between factual and legal innocence made by Justice Scalia in *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner's second alleged late discovery of a relevant factual predicate is his claim that he only "discovered" that his sentence was unconstitutionally excessive when he obtained a copy of Ohio's former sexual offender registration statutes in 2018. Again, this is discovery of a legal argument, not a factual predicate.

Petitioner's third alleged late discovery of a factual predicate allegedly happened when Judge Graham of this Court dismissed his prior habeas corpus case on May 5, 2017 (Objections, ECF No. 21, PageID 1636, 1641. The same factual/legal distinction applies here. And even if Judge Graham's decision revealed a relevant factual predicate, May 5, 2017, is almost two years before the Petition was filed here.

Petitioner's fourth alleged late discovery of a factual predicate is his discovery of the alleged ineffective assistance of his trial counsel and appellate counsel which he says he learned December 12, 2018 (Objections, ECF No. 21, PageID 1641, citing State Court Record, ECF No. 11-3, Ex. 68). In that Opinion the Fifth District Court of Appeals affirmed dismissal of Hertel's state habeas corpus petition deciding, inter alia,

> {¶29} Habeas corpus is not a proper remedy for reviewing errors of sentencing by a court of competent jurisdiction. *Walker v. Maxwell*, 1 Ohio St.2d 136, 205 N.E.2d 394 (1965). Appeal or postconviction relief would be the proper remedy. *Blackburn v. Jago*, 39 Ohio St.3d 139, 529 N.E.2d 929 (1988).

*Id.*. at PageID 1411. Petitioner certainly learned long before December 12, 2018, the fact that the sentencing issues he attempted to raise in state habeas had not been raised on direct appeal. On December 12, 2018, he learned a legal consequence of that fact, to wit, that the issues could not be addressed in state habeas. He may or may not have a colorable argument that failure to include

those issues was ineffective assistance of appellate counsel or that failure to preserve them for appeal was ineffective assistance of trial counsel,[2] but he did not learn of the factual predicates for those claims on December 12, 2018.

Petitioner's fifth alleged late discovery of a relevant factual predicate is his alleged discovery that "state courts are constitutionally mandated to recognize and vacate void sentences irregardless [sic] of procedural default." (Objections, ECF No. 21, PageID 1642). Again, Petitioner claims he learned this factual predicate when he read several Ohio court decisions. There is no such federal constitutional mandate and reading case law is not discovering a factual predicate as that term is used in § 2244(d)(1)(D).

## III. State-Created Impediments to Filing

In the alternative, Petitioner claims tolling under 28 U.S.C. § 2244(d)(1)(B) which starts the statute of limitations running a state-created impediment to filing is removed. Hertel asserts that the failure of the States of Arizona and Ohio to provide him with a law library in his Arizona imprisonment that meets the requirements of *Bounds v. Smith,* 430 U.S. 817 (1977), constitutes such an impediment. None of the case law cited by Petitioner stands for this proposition and the Court agrees with the Magistrate Judge on this point. Accepting this interpretation of "state-created impediment" would lead to boundless litigation over the sufficiency of particular prison libraries, again undermining the purpose of §2244(d)(1)(B).

Petitioner asserts next that Ohio's failure to provide him with effective legal assistance constituted a relevant state impediment. But there is no Sixth Amendment right to the assistance of counsel in preparing a federal habeas corpus petition. *McCleskey v. Zant*, 499 U.S. 467(1991).

---

[2] Note that the Fifth District also held the claims could have been raised in a petition for post-conviction relief for which there is no Sixth Amendment right to effective assistance of counsel

7

## IV. Extraordinary Circumstances

Petitioner next claims he is entitled to equitable tolling of the statute. The Report rejected this argument, noting that "the age of the case is mostly attributable to Hertel's flight to Germany to avoid prosecution (ECF No. 17, PageID 1594). Hertel objects that "the age of the case is irrelevant," but then blames it entirely on state inaction (ECF No. 21, PageID 1646). He then relies on *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), as stating the standard for equitable tolling. The Sixth Circuit has overruled *Dunlap*. *Ata v. Scutt*, 662 F.3d 736 n3 (6th Cir. 2011); *Hall v. Warden*, 662 F.3d 745 (6th Cir. 2011).

## V. Actual Innocence

Petitioner claims that his actual innocence of being a Tier III sex offender tolls the statute and is proven by new evidence, to wit, his discovery of the 1998 version of Ohio Revised Code Ch. 2950. The Court agrees with the Magistrate Judge that this is not the type of new evidence required by relevant Supreme Court precedent, particularly *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013). See also *Bousley v. United States, supra.*

## VI. Relation Back

Petitioner's sixth defense of the timeliness of his Petition argues that the claims made in his Petition relate back to the claims made in his prior habeas corpus case because they arise from the same common core of operative facts (Response, ECF No. 16, PageID 1563-64, relying on *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The Magistrate Judge rejected this argument because relation back only applies to save from a limitations defense amendments made to pending habeas corpus petitions, noting that the prior habeas case was dismissed with prejudice by Judge Graham. The Court agrees with the Magistrate Judge that the case law relied on by Petitioner (*Parr v. United States*, 351 U.S. 513 (1956), and *United States v. Bratcher*, 833 F.2d 69 (6th Cir. 1988)) is not applicable here where those two cases involved dismissals without prejudice.

In his Objections Petitioner asks in the alternative that the Court treat his Objections as a motion for relief from judgment under Fed.R.Civ.P. 60(b). The Court declines to do so. Any such motion must be made in the prior case itself.

## VII. Cause and Prejudice to Excuse Procedural Default

The Court finds the Magistrate Judge was correct in concluding procedural default analysis is not pertinent because Respondent did not rely on a claim of procedural default in the Motion to Dismiss.

## VIII. Pending Ohio Cases

Petitioner asks this Court to find that the Ohio bar on state habeas for a person not presently in Ohio custody is a state-created impediment to his federal filing. Not so. As the Supplemental Report recommended, the filing of a new collateral attack in Ohio at some time after the federal statute of limitations has run does not resurrect the limitations period (Supplemental Report, ECF No. 20, PageID 1632, citing *Searcy v. Carter,* 246 F.3d 515 (6th Cir. 2001).

## IX. Jurisdiction to Vacate Void Sentences

In his Objections to the original Report, Petitioner argued this Court should ignore the statute of limitations and adjudicate his claim that his conviction and sentence are void (ECF No. 18, PageID 1616). The Supplemental Report rejected this position because Petitioner had cited no federal authority in support (ECF No. 20, PageID 1633).

Petitioner objects that *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), holds the AEDPA statute of limitations may be ignored "in the extraordinary case." (ECF No. 21, PageID 1651). What *Souter* actually held, and what the Supreme Court later confirmed in *McQuiggin,* is that a habeas petitioner who presents satisfactory evidence of factual innocence of the quality required by *Schlup v. Delo,* 513 U.S. 298, 316 (1995), can avoid the bar of the statute of limitations or any other procedural bar to having a habeas court adjudicate his underlying constitutional claims. In fact the *Souter* Court

9

held Congress had enacted AEDPA to be consistent with the actual innocence gateway recognized the year before AEDPA in *Schlup*. Petitioner has not made such a showing of actual innocence.

In further objection, Hertel argues for the general proposition that "any court [has the authority] to relieve a party of a void judgment and permit the withdrawal of a guilty plea where the interests of justice demand it." (ECF No. 21, citing Fed.R.Civ.P. 60, 18 U.S.C. § 2106, *Tinder v. United States*, 345 U.S. 565 (1953), and *Rutledge v. United States*, 517 U.S. 292 (1996). He objects further

> The [Supplemental Report] has no opinion on this interest of justice argument, nor on the corollary argument that "This court has no authority to leave in place a conviction or sentence voided by the violation of a substantive constitutional rule as held pursuant [to] *Ex parte Siebold,* 100 U.S. 371, 376 (1880), as cited in *Montgomery v. Louisiana,* 134 S. Ct. 718, 728-732 (2016).

(Objections, ECF No. 21, PageID 1652).

None of the authority Petitioner cites supports this very broad legal proposition.

Fed.R.Civ.P. 60 allows a court to relieve a litigant of a judgment **in that court** under certain specified circumstances. It does not, for example, authorize the United States District Court for the Southern District of Ohio to vacate a judgment of an Indiana state court of general jurisdiction or a sister federal district court.

18 U.S.C. § 2106 does not exist.

In *Tinder v. United States,* 345 U.S. 565 (1953), the Supreme Court resolved a conflict among the lower courts on interpretation of the mail fraud statutes. It did so on appeal from denial of a motion to vacate or correct under 28 U.S.C. § 2255, the 1948 statute that provides habeas corpus-like relief for persons convicted of federal crimes. The case says nothing about statutes of limitation. Since enactment of the AEDPA, these motions to vacate have been subject to a statute of limitations which parallels § 2244(d) in most particulars. *Rutledge* was before the Supreme

10

Court on direct appeal and says nothing relevant to Petitioner's argument.

Petitioner also relies on the Supreme Court's recent decision in *Montgomery v. Louisiana*, 136 S. Ct. 718[3] (2016). *Montgomery* was before the Supreme Court on review of a decision of the Supreme Court of Louisiana which had declined to apply retroactively the decision in *Miller v. Alabama,* 567 U.S. \_\_\_, \_\_\_, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), forbidding mandatory life without parole sentences for juvenile murderers. The Court held that because the rule in *Miller* was a new substantive rule of constitutional (Eighth Amendment) law, the States were obliged to apply that rule in collateral review of state convictions, relying on the retroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288 (1989). Although Montgomery had been in custody for almost fifty years when *Miller* was announced, Louisiana has a statute that provides "[a]n illegal sentence may be corrected **at any time** by the court that imposed the sentence." 136 S. Ct. at 726 (emphasis added) and Montgomery filed under that statute. Thus Montgomery was properly before the Louisiana courts and the Supreme Court had certiorari jurisdiction to review a final decision of those courts which decided a federal constitutional question. *Id.* at 727, citing *Martin v. Hunter's Lessee*, 14 U.S. 304, 1 Wheat. 304, 340-341 (1816), and *Yates v. Aiken*, 484 U.S. 211, 218 (1988). Montgomery says nothing applicable to the statute of limitations question before this Court.

Nor does *Ex parte Siebold,*100 U.S. 371 (1879), support a different result. There the Supreme Court exercised its habeas corpus authority as an appellate court[4] to decide that the statute under which petitioners had been convicted in a lower federal court was constitutional. No question was raised of the timeliness of the petition.

---

[3] Miscited by Petitioner as 134 S.Ct. 718
[4] Because the Supreme Court has only very limited original jurisdiction, it had to characterize its exercise of habeas authority as appellate; it had no jurisdiction at that time to review convictions on a writ of error.

### X. Certificate of Appealability

In both Report, the Magistrate Judge recommended denying a certificate of appealability because reasonable jurists would not disagree with the conclusion that the Petition is barred by the statute of limitations. In objecting, Petitioner asks this Court to consider particularly the sentence he is serving which he characterizes as excessive (Objections, ECF No. 21, PageID 1654). While the disproportion between a crime and the imposed sentence may be an appropriate consideration on the merits of an Eighth Amendment Cruel and Unusual Punishment claim on the merits of a habeas corpus petition, it is not a basis for reaching the merits in the face of a valid statute of limitations defense. Although Petitioner has written at great length in this matter, he has not demonstrated that any jurist of reason would disagree with the conclusion that Respondent has raised a valid defense. The Sixth Circuit has authority, if it disagrees with this conclusion, to itself issue a certificate of appealability on Petitioner's application to that court.

### XI. Conclusion

Having reviewed the Magistrate Judge's Reports *de novo*, the Court **OVERRULES** Petitioner's objections and **ORDERS** that the Petition be dismissed with prejudice. The Clerk shall enter judgment to that effect. The Court **DENIES** Petitioner a certificate of appealability and certifies that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**IT IS SO ORDERED.**

    *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**